# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES LEONBERGER, DONALD ASHBY, KEVIN PETZOLDT, RONALD JONES, BOB ALLISON, BETTY ARNOLD, on her own behalf as a representative of the estate of RICHARD ARNOLD, DONALD WILLIAM, and ALAN TODNEM,<br><br>          Plaintiffs,<br><br>    - against -<br><br>SYNGENTA CROP PROTECTION LLC, CHEVRON U.S.A., INC., and CF INDUSTRIES HOLDINGS, INC.,<br><br>          Defendants. | Case No. _____<br><br>(Formerly Case No. 2022-L-000858 in the Circuit Court of Cook County, Illinois) |

## NOTICE OF REMOVAL

Defendant Syngenta Crop Protection LLC ("Syngenta"), pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1367, hereby removes the above-captioned action from the Circuit Court of Cook County, Illinois, case number 2022-L-000858, to the United States District Court for the Northern District of Illinois. In support of removal, Syngenta provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

## NATURE OF REMOVED ACTION

1. On January 27, 2022, Plaintiffs filed this action, *James Leonberger et al. v. Syngenta Crop Protection, LLC et al.*, in the Circuit Court of Cook County, Illinois, case number 2022-L-000858, alleging claims based upon exposure to products containing paraquat and Plaintiffs' subsequent diagnosis with Parkinson's disease.

2. The Complaint asserts seven causes of action against Syngenta, Chevron U.S.A. Inc. ("Chevron"), and CF Industries Holdings, Inc. ("CF Industries"), namely: (i) design defect;

(ii) failure to warn; (iii) negligence; (iv) negligent misrepresentation; (v) breach of implied warranty of merchantability; (vi) survival; and (vii) wrongful death.

3. The thrust of Plaintiffs' allegations is that by manufacturing, distributing, or selling products containing paraquat, Syngenta and Chevron exposed them to an increased likelihood of developing Parkinson's disease, a disease that they were later diagnosed with.

4. This alleged conduct purportedly harmed Plaintiffs in the form of physical pain, mental anguish, and medical expenses. Compl. ¶¶ 1–2, 134.

5. Over 700 similar cases—alleging Parkinson's disease based on past exposure to paraquat—have been filed against Syngenta and Chevron in federal courts around the country, and the vast majority have been consolidated into a multidistrict litigation in the Southern District of Illinois. *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill. 2021). Discovery is proceeding in the MDL, and new cases are regularly being directly filed or transferred to it. By filing this case in state court, Plaintiffs are seeking to avoid the MDL, which is designed to ensure the most efficient and orderly administration of a large number of cases presenting common issues of law and fact.

6. This case is subject to removal on the grounds of diversity jurisdiction, however, because there would be complete diversity of citizenship between Plaintiffs and Defendants but for the joinder of CF Industries as a Defendant. Plaintiffs' claims against CF Industries do not arise out of the same transaction as their claims against Syngenta and Chevron. Defendant CF Industries has therefore been fraudulently misjoined as a Defendant, and its citizenship is properly ignored for purposes of evaluating the Court's jurisdiction.

7. Plaintiffs' claims are also removable because they arise under federal law. Plaintiffs' claims are premised on the breach of duties governed by the Federal Insecticide,

Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.* ("FIFRA"), as regulated and enforced by the Environmental Protection Agency ("EPA"). *See, e.g.*, *id.* § 136a (EPA must register any pesticide, including herbicides, before it is sold domestically after weighing the economic, social, and environmental benefits and costs of the product); *id.* § 136(q)(1)(F) (FIFRA empowers EPA to control warnings, directions, and packaging, and specifically mandates warnings for pesticides that are "adequate to protect health and the environment"); *id.* § 136j(a)(2)(G) (making it illegal to use any pesticide "in a manner inconsistent with its labeling"); 40 C.F.R. § 152.160 (paraquat is a "restricted use" pesticide and may be applied only by a certified "restricted use" applicator or someone acting under a certified applicator's "direct supervision"); *id.* §§ 171.103, 171.105 (pesticide applicators are taught to read and understand warnings and instructions for paraquat and must take "[m]easures to avoid or minimize adverse health effects").

8. Because any duties relating to paraquat arise exclusively from federal law—FIFRA and its underlying regulations—alleged violations of federal law form the basis for the underlying claims. It would be illegal for any state to require that a paraquat label include a warning about the risk of developing Parkinson's disease, because EPA has determined that no causal link exists. *See* 7 U.S.C. § 136v(b) (states are prohibited from imposing "labeling or packaging" requirements "in addition to or different from" those required under FIFRA); EPA, Paraquat Dichloride: Interim Registration Review Decision, Case No. 0262, at 18 (July 13, 2021), *available at* https://www.regulations.gov/document/EPA-HQ-OPP-2011-0855-0307 ("[T]he weight of evidence [is] insufficient to link paraquat exposure from pesticidal use of U.S. registered products to [Parkinson's disease] in humans.").

9. Federal courts have routinely grappled with an important question that will be raised here: which state law claims regarding pesticide products are preempted under FIFRA. *See,*

*e.g.*, *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993) (common-law tort claims based on inadequate labeling of pesticides preempted by FIFRA); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir. 1994) (common-law claims based upon manufacturer's alleged failure to properly label pesticides and to warn of their dangers preempted by FIFRA); *Lescs v. William R. Hughes, Inc.*, 168 F.3d 482 (4th Cir. 1999) (tort claims regarding injuries allegedly caused by pesticide exposure preempted by FIFRA); *King v. E.I. Dupont De Nemours & Co.*, 996 F.2d 1346 (1st Cir. 1993) (FIFRA preempted state law tort claim due to failure to warn); *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1208 (9th Cir. 2002) (state law claims regarding pesticide manufacturer's label instructions preempted by FIFRA); *Nat'l Bank of Com. of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999) (inadequate labeling, failure to warn, and express and implead breach of warranty claims preempted by FIFRA); *Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207 (3d Cir. 2010) (failure to warn claims and claims based on alleged misrepresentation in pesticide marketing brochure not preempted).

10. In accordance with 28 U.S.C. § 1446(a) and the Local Rules of this Court, a copy of the Complaint is attached as **Exhibit A** ("Compl."). A copy of all other process, pleadings, and orders served on Syngenta and Chevron or otherwise on file with the state court are attached as **Exhibit B**. Copies of emails from Defendants Chevron and CF Industries consenting to the removal of this proceeding to this Court are attached as **Exhibit C**.

## TIMELINESS OF REMOVAL

11. Syngenta was served with the Complaint on January 28, 2022. Chevron and CF Industries were served with the Complaint on or about January 28, 2022. Defendants have not responded to the Complaint in state court.

12. In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed because it is within 30 days of Defendants being served. *See Murphy Bros., Inc. v. Michetti Pipe*

*Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (30-day removal period begins to run upon service of summons and complaint).

## PROPRIETY OF VENUE

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the Circuit Court of Cook County, Illinois, where the state court action was pending prior to removal, is a state court within this federal district and division.

## BASIS OF REMOVAL

### Diversity Jurisdiction

14. Removal is proper pursuant to 28 U.S.C. §§ 1332 and 1441 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

15. Plaintiff James Leonberger is a citizen of the State of Illinois. Compl. ¶¶ 5, 21. Plaintiff Donald Ashby is a citizen of the State of Florida. *Id.* ¶¶ 6, 25. Plaintiff Kevin Petzoldt is a citizen of the State of Missouri. *Id.* ¶¶ 7, 29. Plaintiff Ronald Jones is a citizen of the State of North Carolina. *Id.* ¶¶ 8, 33. Plaintiff Bob Allison is a citizen of the State of Washington. *Id.* ¶¶ 9, 37. Plaintiff Betty Arnold is a citizen of the State of Kentucky. *Id.* ¶¶ 10, 41. Plaintiff Donald William is a citizen of the State of Louisiana. *Id.* ¶¶ 11, 46. Plaintiff Alan Todnem is a citizen of the State of Wisconsin. *Id.* ¶¶ 12, 50.

16. Syngenta is an LLC with its headquarters in Greensboro, North Carolina. But an LLC is a citizen of the State in which its members reside, not the State where its principal place of business is located, and, where applicable, a court must trace an LLC's citizenship through multiple layers of ownership. *Wise v. Wachovia Secs., LLC*, 450 F.3d 265, 267 (7th Cir. 2006). Syngenta's sole member is Syngenta Seeds, LLC, which is headquartered in Downers Grove, Illinois. The sole member of Syngenta Seeds, LLC is Syngenta Corporation, which is incorporated and headquartered in Delaware. Syngenta is therefore a citizen only of the State of Delaware.

17. Chevron is headquartered in San Ramon, California, and incorporated in the Commonwealth of Pennsylvania, and it is thus a resident of those two States. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (citing 28 U.S.C. § 1332(c)(1)).

18. Therefore, complete diversity exists among the parties but for the joinder of CF Industries as a defendant, and CF Industries' residency should be excluded for the purposes of determining the existence of diversity jurisdiction.

19. **First,** the residency of CF Industries should be disregarded because it has been fraudulently misjoined in this proceeding in an attempt to destroy diversity and undercut the purposes of the federal MDL—to "promote the just and efficient" resolution of litigation presenting similar issues. 28 U.S.C. § 1407(a); *see, e.g.*, *In re Prempro Prods. Liab. Litig.*, 417 F. Supp. 2d 1058, 1059 & n.3 (E.D. Ark. 2006) (noting "MDL courts have repeatedly held that misjoined plaintiffs will not defeat diversity" and collecting cases); *In re Diet Drugs Prods. Liab. Litig.*, No. CIV.A. 98-20478, 1203, 1999 WL 554584, at *5 (E.D. Pa. July 16, 1999) (finding misjoinder of local Defendants where suit by "eleven Plaintiffs selected from seven different states" could "interfere[] with the court's ability to administer this [MDL] case").

20. The doctrine of fraudulent misjoinder applies where plaintiffs have joined a non-diverse defendant against whom they press claims that have "no real connection" to the claims they assert against a diverse defendant. *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503-05 (E.D. Cal. 2008) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). In that scenario, the plaintiffs have misjoined the non-diverse defendant and cannot be permitted to defeat the diverse defendant's statutory "right of removal." *Id.*

21. To assess whether a defendant has been misjoined, courts consult the federal and state rules for permissive joinder. *See Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F.

Supp. 3d 639, 645-46 (S.D.W. Va. 2017). Under Rule 20, the joinder of multiple defendants in a single action requires that the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and include a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2); *see Emil Buck & Sons, Inc. v. Int'l Press Servs., Inc.*, No. 86 C 4262, 1986 WL 7668, at *1 (N.D. Ill. June 27, 1986) (noting Illinois joinder provision in 735 ILCS 5/2-404 is "identical to that in Rule 20(a)").

22. Here, Plaintiffs' claims against Syngenta and Chevron are not based on "the same ... series of transactions" as their claims against CF Industries. Fed. R. Civ. P. 20(a)(2). Plaintiffs allege that Syngenta and Chevron: "were the exclusive designers, manufacturers, and/or distributors" of Paraquat, Compl. ¶¶ 91–92; conducted "research studies" indicating "low-dose paraquat exposure" could increase the risk of Parkinson's disease, *id.* ¶ 94; and "maintained ongoing communications" with one another about such risk of "low-dose paraquat exposure," *id.* ¶ 96.

23. Conversely, Plaintiffs allege that CF Industries (or its predecessors) "acted as a formulator" for Paraquat, *id.* ¶¶ 90, 93, and that Syngenta and Chevron merely shared certain information about "potential health consequences of paraquat exposure," *id.* ¶ 96.

24. Syngenta and Chevron's alleged actions exclusively manufacturing and designing a defective product and concealing risks of "low-dose" exposure are wholly distinct from CF Industries' alleged actions as a downstream formulator—i.e., a party that merely repackages EPA-approved pesticides into a finished product. Indeed, Congress itself has recognized this difference between a manufacturer/registrant and a formulator, and created a "formulators' exemption" to FIFRA that "excuses an applicant from the requirement to submit or cite data pertaining to any pesticide contained in his product that is derived solely from one or more EPA-registered products

which the applicant purchases from another person." 40 C.F.R. § 152.85; *see* 7 U.S.C. § 136a(c)(2)(D). Because the actions taken by CF Industries are "wholly distinct" from those taken by Syngenta and Chevron, CF Industries has been fraudulently misjoined. *E.g.*, *Smith v. Hendricks*, 140 F. Supp. 3d 66, 75 (D.D.C. 2015) (severing misjoined defendants where "[t]he factual basis for the claims against [the manufacturer] pertains to the research, development, production, and marketing of the [] system; the factual basis for the claims against the Healthcare Provider Defendants pertains to Plaintiff's treatment by and interaction with her healthcare providers").

25. Moreover, Plaintiffs allege that CF Industries distributed Paraquat only "in Illinois." Compl. ¶ 90. Accordingly, only one Plaintiff (Mr. Leonberger) could even possibly have been harmed by the alleged acts of CF Industries in Illinois. *Id.* ¶¶ 21-24. Plaintiffs make no allegation linking CF Industries to Plaintiffs residing in Florida, Kentucky, Louisiana, Missouri, North Carolina, Washington, and Wisconsin. Because seven of the eight Plaintiffs assert no claims against CF Industries, Plaintiffs have fraudulently misjoined CF Industries. *See Greene v. Wyeth*, 344 F. Supp. 2d 674, 683–84 (D. Nev. 2004) (non-diverse defendants were misjoined where "only two of the [five] [p]laintiffs" pressed claims against them); *Jones v. Nastech Pharm.*, 319 F. Supp. 2d 720, 728 (S.D. Miss. 2004) (non-diverse physician defendant who treated only one of the five plaintiffs was misjoined).

26. For these reasons, CF Industries has been fraudulently misjoined. Complete diversity therefore exists among the parties because Plaintiffs are citizens of Florida, Illinois, Kentucky, Louisiana, Missouri, North Carolina, Washington, and Wisconsin. Meanwhile, Syngenta is a citizen of Delaware and Chevron is a citizen of California and Pennsylvania.

27. ***Second,*** there is more than a plausible basis for concluding that the amount in controversy in this proceeding exceeds $75,000. A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). The defendant is required to present evidence supporting that plausible allegation only if the allegation is challenged by the plaintiff or the court. *Id.* The court applies a preponderance of the evidence standard and may review any evidence submitted with the notice of removal, as well as make a "good faith estimate" to determine whether the amount in controversy has been met. *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578–79 (7th Cir. 2017).

28. Allegations of long-term health issues are more likely to exceed the amount in controversy requirement. *See Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012); *Wragge v. Boeing Co.*, 532 F. Supp. 3d 616, 624 (N.D. Ill. 2021).

29. The amount in controversy is met here because eight different Plaintiffs seek substantial monetary damages for physical pain, mental anguish, loss of consortium, and medical expenses as a result of their diagnosis with a serious long-term illness—Parkinson's disease. Compl. ¶¶ 21–53. Indeed, the cost of one Plaintiff's medical treatment alone likely satisfies the $75,000 requirement. *See* Matthew Gavidia, "Study Details Economic Burden of Parkinson's Disease in the United States," *available at* https://www.ajmc.com/view/study-details-economic-burden-of-parkinson-disease-in-the-united-states.[1]

30. ***Finally,*** the exception to removal based on diversity of citizenship stated in 28 U.S.C. § 1441(b)(2) does not apply. Although that provision prohibits diversity removal of a case

---

[1] If Syngenta and Chevron are mistaken on this point, they invite Plaintiffs to stipulate that their alleged damages do not exceed $75,000.

involving an in-forum defendant who is "properly joined," Defendant CF Industries has been fraudulently misjoined in this proceeding for the reasons explained above. *See supra* ¶¶ 19–25; *Greene*, 344 F. Supp. 2d at 677, 683 (permitting removal on diversity grounds notwithstanding § 1441(b)(2) where in-forum defendant was fraudulently misjoined).

### Federal Question Jurisdiction

31.  Removal is proper in the alternative pursuant to 28 U.S.C. §§ 1331 and 1441 because Plaintiffs' claims present a substantial federal question.

32.  The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

33.  "[W]hether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002). The artful-pleading doctrine, however, "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("[T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented.").

34.  Even when state law supplies the plaintiff's causes of action, a complaint may raise a substantial question of federal law if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal

law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law.").

> A. **Plaintiffs' Claims Implicate a Federal Issue That Is Necessarily Raised, Actually Disputed, Substantial, and Capable of Resolution in Federal Court.**

35. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14).

36. Where, as here, purported state law claims are premised on violations of duties governed by a federal statute, these requirements are satisfied and a federal court has jurisdiction over those claims. *See Bd. of Comm'rs of Se. La. Flood Prot. Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722–23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were premised on failure to satisfy standard of care established in federal statute); *see also Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (concluding a federal question was raised where "Plaintiffs' dependence on federal law permeates the allegations such that the [claims purportedly brought under state law] cannot be adjudicated without reliance on and explication of federal law").

37. Although Plaintiffs ostensibly plead claims against Syngenta and Chevron as violations of state law, they base the underlying theory of liability on alleged violations of federal law or alleged duties arising out of FIFRA. Compl. ¶¶ 78–86. Plaintiffs expressly acknowledge

that FIFRA imposes specific duties on entities that manufacture or sell paraquat, and that the EPA enforces those duties. *Id*. Plaintiffs also acknowledge that they "do not seek . . . to impose on Defendants any labeling or packaging requirement[s] in addition to or different from those required under FIFRA," and expressly states that "[a]ny allegation in this Complaint that a Defendant breached a duty to provide adequate directions for the use of or warnings about Paraquat, breached a duty to provide adequate packaging for Paraquat, concealed, suppressed, or omitted to disclose any material fact about Paraquat, or engaged in any unfair or deceptive practice regarding Paraquat, is intended and should be construed to be consistent with that alleged breach, concealment, suppression, or omission, or unfair or deceptive practice having rendered the Paraquat 'misbranded' under FIFRA." *Id*. ¶ 87. Plaintiffs' claim that they "seek[] relief in this action only under state law" and not under FIFRA is unpersuasive given that *all* of the duties at issue are governed by federal law. *Id*.

38. FIFRA and its implementing regulations, as Plaintiffs acknowledge, are the exclusive source of the asserted legal duties regarding the labeling, handling, and use of paraquat. *See, e.g.*, 7 U.S.C. § 136(q)(1)(F) (FIFRA empowers EPA to control warnings, directions, and packaging, and specifically mandates warnings that are "adequate to protect health and the environment"); *id*. § 136j(a)(2)(G) (it is illegal to use any pesticide "in a manner inconsistent with its labeling"). Indeed, states are *prohibited* from imposing "labeling or packaging" requirements "in addition to or different from" those required under federal law. *Id*. § 136v(b); *see also Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459–60 (2012) (holding that such language "sweeps widely— and in so doing … prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the" federal law). Accordingly, Plaintiffs' claims are necessarily governed by the federal requirements under FIFRA and require

interpretation and application of that statute, as any additional or different duties would be preempted.

39. Plaintiffs' theories of liability against Syngenta and Chevron, as pleaded in the Complaint, are thus predicated on allegations that they breached alleged duties owed under FIFRA regarding the distribution and sale of paraquat. Plaintiffs assert, *inter alia,* that Syngenta and Chevron should have included additional or different information on the labels for paraquat products even though the information on those labels is directly approved by the EPA and federal law prohibits any state law from imposing different requirements. *See, e.g.,* Compl. ¶ 85.

40. The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258.

41. ***First***, Plaintiffs' claims necessarily require resolution of a federal question—i.e., what obligations and duties did Syngenta and Chevron have under FIFRA to warn about a hypothesized connection between paraquat and Parkinson's? *See North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *see also Bd. of Comm'rs,* 850 F.3d at 722–23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty contained in federal law); *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1021–23 (2d Cir. 2014) (duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question); *Virgin Islands Hous. Auth. v.*

*Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or if the action requires construction of a federal statute, or at least a distinctive policy of a federal statute requires the application of federal legal principles.").

42. **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of the alleged duties arising under FIFRA. Specifically, the parties dispute whether Syngenta or Chevron had an obligation to warn about, or protect the public from, the alleged association between paraquat and Parkinson's disease, despite the fact that the EPA—the expert agency with regard to all pesticides—has concluded that no such connection exists. *See* EPA, Paraquat Dichloride: Interim Registration Review Decision, Case No. 0262, at 18 (July 13, 2021), *available at* https://www.regulations.gov/document/EPA-HQ-OPP-2011-0855-0307.

43. The key legal issue in this proceeding—whether exposure to paraquat creates an increased risk of developing Parkinson's disease—is currently under review in the Ninth Circuit. *See* Petition for Review, *Cal. Rural Legal Assistance Found. v. E.P.A.,* No. 21-71287 (9th Cir. 2021). The petitioners in that action seek to "set aside, in whole or in part" the EPA's determination that there is insufficient evidence to establish a causal relationship between exposure to paraquat and Parkinson's disease. *Id.* at 2; *id.* Ex. A at 59. The Ninth Circuit's review of a federal agency's determination regarding the key legal issue in this proceeding—whether there is evidence of a causal relationship between paraquat and Parkinson's disease—is clear confirmation that this lawsuit centers on a disputed federal issue.

44. **Third**, the federal issue presented by Plaintiffs' claim is "substantial." *Gunn*, 568 U.S. at 258. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. Among other things, the Court must assess whether

the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Id.* at 260–61 (quoting *Grable*, 545 U.S. at 315; *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

45. Congress recognized the importance of a nationwide approach to the EPA's regulation of pesticides when it enacted FIFRA. *See Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d at 1205–06 ("Congress has afforded the EPA substantial enforcement powers under FIFRA"). FIFRA recognizes the uniquely federal interest in regulating pesticides across the nation and expressly excludes the authority of states to do so. *See* 7 U.S.C. § 136v(b) (states are prohibited from imposing "labeling or packaging" requirements "in addition to or different from" those required under FIFRA); *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444 (2005) (creating a two-part test for analyzing preemption under FIFRA). Federal courts are uniquely empowered to answer questions regarding the scope of FIFRA and to evaluate the EPA's decision-making, including with regard to paraquat and Parkinson's disease. *See Cal. Rural Legal Assistance Found. v. E.P.A.*, No. 21-71287 (9th Cir. 2021).

46. This lawsuit raises a substantial federal question even though FIFRA does not provide for a private right of action. In *Grable*, the Supreme Court held that the absence of a federal cause of action does not necessarily foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction

into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1018–19, 1024 (determining that the federal issue was substantial even though the underlying federal statute did not include a private right of action where it was "significant to the development of a uniform body of federal securities regulation"); *Ranck v. Mt. Hood Cable Reg. Comm'n*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at *4–5 (D. Ore. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* despite the absence of a private right of action).

47. Removal is especially appropriate here because over 700 cases similar to Plaintiffs' action are pending in the Paraquat MDL in the Southern District of Illinois. *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill. 2021).

48. **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Indeed, federal courts are afforded exclusive jurisdiction to hear challenges to the EPA's authority to enforce FIFRA. *See* 7 U.S.C. § 136n. Litigating this case in a state court runs the risk of the state court applying federal requirements in a manner either in tension or in conflict with the way the federal agency tasked with enforcing FIFRA—the EPA—applies them. The pending petition for review in the Ninth Circuit regarding the EPA's determination regarding paraquat and Parkinson's disease illustrates that federal courts are uniquely situated to answer the central legal questions in this lawsuit. Federal jurisdiction is therefore properly exercised to resolve disputed issues of federal law under FIFRA.

49. In sum, removal of this action is appropriate because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial

responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *Bd. of Comm'rs*, 850 F.3d at 722–23; *NASDAQ OMX Grp.*, 770 F.3d at 1031.

### B. The Court Can Exercise Supplemental Jurisdiction.

50. If the Court determines that some, but not all, of Plaintiffs' claims implicate a substantial federal question, the Court can evaluate whether to retain the non-federal claims under the doctrine of supplemental jurisdiction which grants jurisdiction over state claims forming part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

51. It is not necessary to establish that *all* of Plaintiffs' causes of action raise a federal question to establish federal jurisdiction. Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, "[n]othing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997). Instead, "federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact." *Id.* at 164–65 (internal quotation marks omitted).

52. Because the Court has original jurisdiction over at least some counts against Syngenta and Chevron, it has supplemental jurisdiction over Plaintiffs' remaining counts against the Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

53. The presence of state law claims, if any, therefore does not defeat this Court's original jurisdiction over the federal claims.

### OTHER REMOVAL ITEMS

54. Under 28 U.S.C. § 1446(b)(2)(A), all Defendants that have been properly joined and must join or consent to removal.

55. All Defendants have been served in this action and consent to removal, as indicated by counsel's signatures below and Exhibit C attached hereto.

56. By filing this Notice of Removal, Syngenta expressly reserves, and does not waive, any and all defenses that may be available, including those related to personal jurisdiction and service of process. If any question arises as to the propriety of removal to this Court, Syngenta requests the opportunity to submit a brief in support of its position that this case has been properly removed and to present oral argument.

57. Pursuant to 28 U.S.C. § 1446(d), Syngenta is contemporaneously filing a Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiffs.

**WHEREFORE**, Syngenta removes this action, now pending in the Circuit Court of Cook County, Illinois, case number 2022-L-000858, to this Court.

-19-

DATED: February 23, 2022

          Respectfully submitted,

          */s/ Amelia Bailey*
          Amelia Bailey (IL ARDC #6323592)
          amelia.bailey@kirkland.com
          KIRKLAND & ELLIS LLP
          300 North LaSalle,
          Chicago, IL 60654
          Tel.: (312) 862-2765
          Fax: (312) 862-2200

          *Counsel for Defendant Syngenta Crop Protection LLC*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on February 23, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court, and that a copy of the foregoing is being furnished by U.S. Mail and e-mail to counsel for Plaintiffs and Defendants at the following addresses:

Benjamin Gillig, Esq. (Illinois Bar No. 6326957)
Aimee Wagstaff, Esq. (to appear PHV)
WAGSTAFF LAW FIRM
940 N. Lincoln St.
Denver, CO 80203
Phone: (303) 376-6360
Bgillig@wagstafilawfirm.com
Awagstaff@wagstafilawfirm.com
**ATTORNEYS FOR PLAINTIFFS**

Thomas J. Morel
WILLIAMS & JOHN, LTD.
Willis Tower
233 S. Wacker Dr., Suite 6800
Chicago, IL 60606
Phone: (312) 443-3211
tjm@willjohnlaw.com
**ATTORNEY FOR DEFENDANT**
**CF INDUSTRIES HOLDINGS, INC.**

Yaakov Roth
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Phone: (202) 879-7658
yroth@jonesday.com
**ATTORNEY FOR CHEVRON U.S.A., INC.**

                                                      */s/ Amelia Bailey*
                                                      Amelia Bailey